# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

JUSTIN GARCIA-ARAUZ,

    Petitioner,

v.

KRISTI NOEM, *et al.*,

    Respondents.

Case No. 2:25-cv-02117-RFB-EJY

**ORDER**

Before the Court is the (ECF No. 12) Amended Motion for Preliminary Injunction by Petitioner Justin Garcia-Arauz. For the following reasons, the Court grants the Motion.

## I.  INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA,

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in twenty similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-

specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to challenge the factual or legal basis for their detention.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Barco Mercado v.

---

BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief has been granted finding the government's reinterpretation of § 1225(b)(2) unlawful. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner challenges Federal Respondents' application of this new policy and the regulatory automatic stay mechanism to prolong his detention for months, despite (1) an immigration judge's finding that because Petitioner was subject to § 1226(a), release upon bond in the amount of $5,000 was appropriate; and (2) the fact that Respondents themselves stated that Petitioner was subject to detention under § 1226(a) in their only filed Notice to Appear. Respondents now contend that the immigration judge erred in ordering Petitioner's release pursuant to section 8 U.S.C. § 1226(a) and assert that Petitioner is lawfully detained pursuant to 8 C.F.R. § 1003.19(i)'s automatic stay and subject to mandatory detention for the duration of removal proceedings under 8 U.S.C. § 1225(b)(2).

For the reasons set forth below, the Court finds that Petitioner is likely to succeed on the merits of his claims that his detention is unlawful under the INA and Due Process Clause, that Petitioner is suffering and will continue to suffer irreparable harm absent relief, and that the equities and public interest favor relief for Petitioner. The Court therefore grants Petitioner's Motion and orders his immediate release on bond as ordered by the immigration judge.

## II.  BACKGROUND

### A. Petitioner Justin Garcia-Arauz

The Court makes the following findings of fact relevant to Petitioner. Petitioner is a 20-year old native and citizen of Nicaragua, who entered the United States on May 6, 2019, at the age of 14, and has resided in the United States since. Petitioner has been in DHS custody since August 18, 2025, and is currently detained at the Nevada Southern Detention Center (NSDC) in Pahrump,

Nevada.

On August 18, 2025, Petitioner was arrested on a charge of Driving Under the Influence and detained at the Clark County Jail in Las Vegas, Nevada. He was taken into ICE custody that same day, then transferred to NSDC where he remains detained. In their Notice of Appeal, DHS alleges that on August 18, 2025, ICE placed Petitioner into removal proceedings through the issuance of a Notice to Appear. ECF No. 24-3. However, when ordered to produce the Notice to Appear by this Court, Respondents only produced a Notice to Appear from May 6, 2019. ECF Nos. 22; 24-2.[4]

Petitioner requested a bond hearing before the immigration court, and on September 3, 2025, an immigration judge ordered Petitioner's release on bond in the amount of $5,000.[5] DHS reserved appeal and filed form EOIR-43, invoking the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2) on September 4, 2025.[6]

### B. Legal Background

Mr. Garcia-Arauz challenges his continued detention under § 1225(b)(2) as unlawful and asserts that § 1226(a) applies to him and noncitizens like him. The Court incorporates by reference its discussion and findings regarding the legal background of detention authority under the INA, the automatic stay provision under 8 CFR § 1003.19(i)(2), and the government's new mandatory detention policy, as provided in its recent ruling in Escobar Salgado. 2025 WL 3205356, at *2-6.

### III.   PROCEDURAL HISTORY

On October 29, 2025, Petitioner filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Kristi Noem, in her official capacity as Secretary of DHS; Pamela

---

[4] The Court notes that this Notice to Appear states that Petitioner is subject to detention under 8 U.S.C. § 1226(a). See ECF No. 24-2.

[5] Despite an order to do so by this Court, the parties have failed to provide any documentation of the immigration judge's September 3, 2025, determination beyond a poorly cropped screenshot of the EOIR case portal that fails to show the IJ's decision or bond conditions, provided by Petitioner. The following information is based on assertions made in Petitioner's pleadings and the Notice to Appeal exhibit submitted by Respondents. See ECF Nos. 12; 24-3.

[6] The Court has received no further information as to the current status of the appeal.

Bondi, in her official capacity as Attorney General of the United States; Todd Lyons, in his official capacity as the Director of ICE within DHS; Bryan Wilcox, in his official capacity as the Field Office Director for Detention and Removal, ICE, DHS; John Mattos, in his official capacity as warden of NSDC; DHS, as the federal agency responsible for implementing and enforcing the INA; and ICE, as the federal sub-agency responsible for the administration and enforcement of the United States's immigration laws. ECF No. 1. Petitioner concurrently filed an Emergency Motion for Preliminary Injunction. ECF No. 2. This Court ordered Petitioner to amend the Petition and Motion to correct errors and include necessary facts on November 5, 2025. ECF No. 7. Petitioner filed the amended pleadings on November 7, 2025. ECF Nos. 11, 12.

This case was initially assigned to the Honorable Judge Cristina D. Silva, but on November 5, 2025, was transferred to the undersigned judge as related to three pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY, 2:25-cv-01553-RFB-BNW, and 2:25-cv-02136-RFB-MDC. ECF No. 5. On November 5, 2025, counsel for Respondents filed a notice of appearance. ECF No. 17. On November 14, 2025, Respondents filed their return to the Petition and response to the instant Motion, arguing for the denial of both. ECF Nos. 15, 16. Petitioner filed his traverse and reply on November 18, 2025. ECF Nos. 20, 21.

The Court's Order follows.

IV.     **LEGAL STANDARD**

   A.  **Preliminary Injunction**

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended

1  (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

2  The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

**B. § 2441 Petition for Writ of Habeas Corpus**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V. DISCUSSION

The Court issues this Order without a hearing. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter."). A court may rely solely on the briefing and affidavits of the parties where the urgent need for injunctive relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).

Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting the failure to request an evidentiary hearing may constitute waiver). For those reasons and considering the urgent need for injunctive relief, the Court finds a preliminary injunction ruling without a hearing is warranted in this case.

### A. Jurisdiction

As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

### B. Burden of Proof

Respondents assert that Petitioner bears the burden of proof in immigration habeas proceedings and has failed to carry that burden based on failure to provide sufficient documentary evidence—evidence that is in Respondents' possession. Respondents argue that it follows that this Motion should be denied. Specifically, they claim that the Court should deny habeas relief for the reasons set forth in an out of circuit district court case that this Court does not find persuasive,

including that the petition contained errors and that the petitioner had not established certain facts by a preponderance of the evidence. See ECF No. 16 (citing Vargas Lopez v. Trump, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025). In this case, the Court finds that Petitioner's verified petition alleges sufficient facts to challenge his detention: Petitioner states the date he entered the United States without inspection, his country of origin, the length of time Petitioner has resided in the United States, the time and place he was detained by ICE, the date he had a bond hearing before an IJ, the result of that proceeding, including the set bond conditions, and the date the government automatically stayed Petitioner's bond.

Thus, the Court finds that even if the burden of proof was to be borne by Petitioner, he has met that burden by a preponderance of the evidence. Further, Respondents have not provided any documents to contest the factual allegations in the sworn Petition. The Court finds in this case that the Respondents must set forth some evidence establishing the basis for continuing to detain Petitioner where Petitioner's facts and legal position would entitle him to release. Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) ("In a petition for a writ of habeas corpus, verified by the oath of the petitioner, facts duly alleged may be taken to be true, unless denied by the return, or controlled by other evidence."). While Respondents provided a Notice to Appear, it was not the Notice to Appear relevant to the instant proceedings—the Court has received no evidence from Respondents that establishes the basis for Petitioner's current detention, only a prior Notice to Appear that establishes Petitioner is subject to § 1226(a)'s detention, which obviously conflicts with their continued assertion that Petitioner is being held under § 1225(b)(2). Therefore, the Court rejects Respondents' argument that Petitioner has failed to carry the burden of proof necessary to satisfy the Winter factors and finds that the government's provided documents fail to support the basis for detention they assert.

### C. Preliminary Injunction

The Court next turns to the analysis of Petitioner's entitlement to preliminary relief under the Winter factors.

#### 1. Likelihood of Success or Serious Questions

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely

to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) Respondents' application of the automatic stay to violates the due process rights of noncitizens detainees like Petitioner; (2) § 1226(a), not § 1225(b)(2), applies to Petitioner, and therefore his continued detention without release on bond violates the INA; and (3) Respondents' continued detention of Petitioner without release on bond in accordance with the IJ's order violates Petitioner's procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

### 1. The Automatic Stay

Before turning to Petitioner's challenge to the lawfulness of his detention under the INA, the Court first addresses Petitioner Garcia-Arauz's detention pursuant to the automatic stay under 8 C.F.R. § 1003.19(i)(2). This Court has already found the automatic stay is unconstitutional because it violates the procedural and substantive due process rights of noncitizen detainees like Petitioner Garcia-Arauz. See Escobar Salgado, 2025 WL 3205356, at *10 (D. Nev. Nov. 17, 2025); Herrera v. Knight, _ F. Supp. 3d. _, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025). The Court incorporates by reference its reasoning and holding as to the automatic stay from these cases to this case. Id. Thus, the Court finds that Respondents' continued detention of Petitioner pursuant to DHS's authority, under 8 C.F.R. § 1003.19(i)(2), to stay the IJ's bond release order is unconstitutional for the same reasons discussed in and incorporated by referenced from Escobar Salgado and Herrera and therefore Petitioner will certainly succeed on the merits of this claim. Id.

### 2. Lawfulness of Petitioner's Detention under the INA

The Court fully incorporates by reference its reasoning and holding regarding Respondents' new interpretation of § 1225(b)(2) from Escobar-Salgado. WL 3205356, at *10-26. As set forth in that Order, the Court rejects Respondents' statutory interpretation and finds Petitioner is detained under § 1226(a) and its implementing regulations, because he is a "longtime

1  U.S. resident[ ], who [was] arrested and detained by ICE far from any port of entry." Id. at 22.

2          3.   Due Process

3  Petitioner also challenges his ongoing detention without ability for release on bond under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge to his detention on this basis.

7  Respondents assert via incorporation by reference to their prior filings that Petitioner's due process rights are not offended by his continued detention without ability for release on bond. Respondents cite to Demore, where the Supreme Court upheld detention without bond hearings for a specific class of noncitizens: those whose detention is governed by § 1226(c). Id. (citing Demore, 538 U.S. at 513, 526). However, Demore's holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where there is no evidence that Petitioner has a single criminal conviction. Despite these arguments, the government has not shown it has any individualized purpose in continuing to detain Petitioner.

20  This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the ability for release on bond in violation of his procedural and substantive due process rights.

        ***i. Procedural Due Process***

26  To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar

immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without ability for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond, particularly given that this decision to continue detention is despite an IJ's determination that bond is warranted in Petitioner's case. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing where *bond was denied* after presentation of the evidence, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond under the government's policy. The risk of erroneous deprivation is extraordinarily high

where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by the fact that an IJ held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for his detention. Accordingly, it is certain that Petitioner is being arbitrarily and unjustifiably deprived of his liberty through his continued detention.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community to continue his detention for the pendency of removal proceedings. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs heavily in favor of granting Petitioner recognition of his procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by respecting an individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any

individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and therefore, he is likely to succeed on the merits of his claim that his detention without the ability for release on bond violates his procedural due process rights.

### ii. *Substantive Due Process*

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty following the IJ's grant of bond. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is likely to succeed on the merits of his claim that he is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### 2. Irreparable Harm

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. All. for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces irreparable harm in the absence of judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that Petitioner is unlawfully detained, as § 1226(a) governs his detention—such that Petitioner would continue to be deprived of his physical liberty in violation of procedural and substantive due process in the absence of intervention—that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### 3. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The harm to the government here is minimal. The Court is simply ordering a recognition of the IJ's bond hearing determination—a bond hearing process which is contemplated by the regulations and is a part of the government's normal operations in any event. Moreover, it is DHS's new reading of the INA which upends decades of consistent agency practice, and subjects millions

of individuals to mandatory detention, that is creating the significant fiscal and administrative burden on the government. However, this is a burden of its own choosing.

Additionally, the Court finds Petitioner's requested preliminary injunction is minimally burdensome on the government, as it merely preserves the status quo *ante litum*. The "status quo *ante litem*" does not mean that the status quo is any situation that precedes a lawsuit. Instead, "[t]he status quo is the last uncontested status which preceded the pending controversy." Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963). Here, the Court finds the status quo *ante litum* is preserved by enforcing the IJ's September 3, 2025, bond order, prior to DHS's invocation of the automatic stay that this Court has held is unconstitutional, and prior to the BIA's erroneous decision in Hurtado.

In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction weigh strongly in his favor. Petitioner has been unlawfully detained for months, deprived of his liberty and separated from his community and livelihood. And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of ... a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention under the INA, Petitioner is entitled to a preliminary injunction.

### D. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant

from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.' " Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm by Petitioner—continued detention despite a determination from an immigration judge that Petitioner is subject to discretionary detention under § 1226(a) and an order for his release on bond—is remedied by granting immediate release subject to the conditions set by the IJ. Given Petitioner's liberty interest is at stake, the Court finds that Petitioner's continued detention would violate his due process rights. Therefore, the Court, in its equitable discretion in fashioning appropriate § 2254 habeas relief, orders Respondents to immediately release Petitioner in accordance with the IJ's order, including its bond conditions.

**E.  Bond**

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioner's release pursuant to the IJ's order would be costly, so the Court declines to set bond beyond the amount imposed by the IJ.

**VI.   CONCLUSION**

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Garcia Arauz's Motion for Preliminary Injunction is **GRANTED**. Pending a resolution on the merits, Respondents are:

(1) **ORDERED** to release Petitioner from custody by **7:00 p.m. on December 3, 2025**.

1	Petitioner shall be subject to the bond and other conditions imposed by the IJ.

2	(2) **ENJOINED** from continuing to detain Petitioner pursuant to the C.F.R. §
3	1003.19(i)(2) automatic stay or otherwise denying Petitioner release on bond on the
4	basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

5	**IT IS FURTHER ORDERED** that that the parties shall file a joint status report on or
6	before **December 4, 2025**, confirming that Petitioner has been released in compliance with this
7	Order.

8	**IT IS FURTHER ORDERED** that Petitioner shall have until **December 13, 2025**, to
9	satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

11	**DATED:** December 3, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**